UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WASHINGTON REGIONAL MEDICAL CENTER                                      PLAINTIFF

v.                              No. 5:17-CV-05245

MICHAEL R. RABER, M.D.                                                  DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant Michael R. Raber, M.D.'s motion for partial summary judgment (Doc. 22), brief in support of his motion (Doc. 23), and a statement of facts in support of his motion (Doc. 24). Plaintiff Washington Regional Medical Center ("WRMC") filed a response in opposition (Doc. 25), a brief in support (Doc. 26), and a statement of facts in support of its response (Doc. 27). Dr. Raber filed a reply (Doc. 28) to the response in opposition. For the reasons stated herein, the Court will GRANT Dr. Raber's motion for partial summary judgment (Doc. 22) on WRMC's unjust enrichment claim and DENY partial summary judgment on WRMC's consequential damages claim.

I.      **Background**

WRMC began recruiting Dr. Michael R. Raber for a neurosurgeon position at its hospital in April of 2016. (Doc. 22-1, ¶ 3). WRMC arranged for Dr. Raber to visit the hospital in Fayetteville, Arkansas, three times between April 2016 and November 2016. (Doc. 26, p. 2). WRMC offered to pay for each trip to introduce Dr. Raber to WRMC Neurosurgical Department staff and the Northwest Arkansas region. (Doc. 22-1, ¶¶ 3-5). All three trips occurred before Dr. Raber signed an employment agreement with WRMC. (Doc. 22-1, ¶ 6). WRMC alleges that Dr. Raber's recruitment expenses were $8,885.00. (Doc. 26, p. 2). These costs included Dr. Raber's airfare, lodging, and meal costs during the trips. (Doc. 28-1). Dr. Raber contends that he never

1

agreed to reimburse WRMC for the expenses of the recruitment trips if he failed to report to work at WRMC. (Doc. 22-1, ¶ 6). During Dr. Raber's visits to Fayetteville and the remainder of the recruitment process, Dr. Raber claims that no one from WRMC told him it was necessary for WRMC to provide 24-hour, 7-days-a-week neurosurgical coverage. (Doc 22-1, ¶ 9). WRMC on the other hand, contends that J. Larry Shackelford, Vice-President of Outreach, informed Dr. Raber of this requirement during one of his visits. (Doc. 26, p. 3). Dr. Raber also met with neurosurgeons on staff at WRMC and none of them informed him that they were leaving their current position. (Doc. 22-1, ¶ 8).

After completing the three visits, WRMC and Dr. Raber entered into a 21-page "Employment Agreement" ("the agreement") on December 7, 2016. (Doc. 27, ¶ 2). The agreement spanned a three-year term beginning on July 1, 2017. (Doc. 22-2, p. 1). The agreement required Dr. Raber to provide a minimum of 90 days of annual neurosurgical on-call coverage for the Emergency Department and provided for Dr. Raber to be paid at a rate of $1,500 per 24-hour period of Emergency Department coverage he provided in addition to the required 90-day on-call requirement. (Doc. 22-2, pp. 7-8).

In the "Compensation" section of the agreement, Dr. Raber was awarded a signing bonus conditioned on "relocat[ing] his residence to the Community on or before July 1, 2017 and commenc[ing] Full-Time employment with [the] Hospital . . . ." (Doc. 22-2, p. 9). WRMC paid Dr. Raber the $48,000 signing bonus, and paid additional payroll taxes in the amount of $3,672. (Doc. 26, pp. 4-5). To protect itself from losing the $48,000 signing bonus in the event of Dr. Raber's breach of the agreement, WRMC required Dr. Raber to sign a promissory note and inserted § 2(H)(x) of the agreement, titled "Repayment Obligations" detailing the repayment obligations of the signing bonus, if Dr. Raber failed to comply with the signing bonus conditions.

(Doc. 22-2, p. 9).

On March 15, 2017, Dr. Raber notified WRMC that he was withdrawing from his commitment to work for WRMC due to personal issues. (Doc. 25-1, p. 2). As a result, WRMC filed this action against Dr. Raber alleging breach of contract and unjust enrichment. (Doc. 1). WRMC was awarded partial summary judgment (Doc. 21) on its breach of contract claim for the $48,000 signing bonus plus interest as detailed in § 2(H)(x) of the agreement. Thus, WRMC's claims for consequential damages for *locum tenens* coverage and its unjust enrichment claim for recruitment expenses and payroll taxes remain pending and are the subject of Dr. Raber's motion.

## II.     Legal Standard for Summary Judgment

When a party moves for summary judgment, the party must establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999). In order for there to be a genuine issue of material fact, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson*, 477 U.S. at 248. "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001). Facts asserted by the nonmoving party "must be properly supported by the record," in which case those "facts and the inferences to be drawn from them [are viewed] in the light most favorable to the nonmoving party." *Id.* at 656–57.

**III.    Analysis**

Because this is a diversity case, the Court applies Arkansas substantive law. *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under that law, Dr. Raber is entitled to summary judgment on WRMC's unjust enrichment claim. However, summary judgment is inappropriate on WRMC's claim for consequential damages.

**A.    Unjust Enrichment**

As an initial matter, Dr. Raber is entitled to judgment on WRMC's unjust enrichment claim. A claim for unjust enrichment relies on the principle that "one person should not unjustly enrich himself at the expense of another." *Dews v. Halliburton Indus., Inc.*, 708 S.W. 2d 67, 69 (1986) (citation omitted). For a claim of unjust enrichment to succeed, the defendant "must have received something of value, to which he was not entitled and which he must restore. There must also be some operative act, intent, or situation to make the enrichment unjust and compensable." *Id.*

With respect to WRMC's claim that its recruiting expenses unjustly enriched Dr. Raber, judgment for Dr. Raber is proper. Where one party gratuitously confers a benefit on another, or does so voluntarily, knowing it has no obligation to do so, enrichment by the receiving party is not unjust. *See* Restatement (Second) of Restitution § 1, *Comment C* (Am. Law Inst. 1937); *cf. Childs v. Adams*, 909 S.W.2d 641, 647 (Ark. 1995) ("[O]ne who officiously confers a benefit upon another is not entitled to restitution therefor." (citing Restatement (Second) of Restitution § 2)). WRMC's claim that Dr. Raber was unjustly enriched by the expenses WRMC voluntarily conferred upon him in the process of recruiting him as an employee, knowing it had no obligation to provide Dr. Raber with those goods or services, is contrary to this principle.

With respect to WRMC's claim that the payroll taxes WRMC paid on the $48,000 signing bonus unjustly enriched Dr. Raber, judgment for Dr. Raber is also proper. Arkansas law "never accommodates a party with an implied contract when he has made a specific one on the same subject matter." *Glenn Mech., Inc. v. S. Arkansas Reg'l Health Ctr., Inc.*, 278 S.W.3d 583, 587 (Ark. Ct. App. 2008) (quoting *Lowell Perkins Agcy., Inc. v. Jacobs*, 469 S.W.2d 89, 92-93 (Ark. 1971)). There is no dispute that the parties entered into the agreement, a written contract concerning Dr. Raber's employment by WRMC. Nor is there any dispute that the agreement contains a provision—§2(H)(x)—specifically laying out Dr. Raber's repayment obligation in the event that he breached the contract. That provision also explicitly states that "[t]he Sign-On Bonus is subject to federal income tax withholding, social security, Medicare and state income tax withholding at the time of payment." (Doc. 22-2, p. 9). Under a separate provision of the agreement, WRMC agreed to pay Dr. Raber "a one-time sign-on bonus in the amount of Forty-eight Thousand Dollars ($48,000.00) ("the Sign-On Bonus")." (Doc. 22-2, p. 8). Because the contract specifically addresses payment of payroll taxes on the signing bonus, there can be no claim under Arkansas law for unjust enrichment premised on payment of those taxes.

Even if such a claim could proceed, it would fail. The meaning of the contractual provisions is clear. Pursuant to the terms of the agreement, WRMC was to pay Dr. Raber a signing bonus of $48,000, minus appropriate payroll taxes. Under these circumstances, that WRMC chose instead to give Dr. Raber $48,000 in full, and then to pay an additional amount in payroll taxes to entities other than Dr. Raber, does not mean that Dr. Raber was unjustly enriched by the payment of those payroll taxes. Rather, any unjust enrichment would lie in that portion of the $48,000 that should not have been given to Dr. Raber, but instead should have been paid as taxes. Dr. Raber has already been ordered to repay the entire $48,000 to WRMC, plus interest. (Doc. 21, p. 3).

Because it is awarded to WRMC on the breach of contract claim, any portion of that amount unjustly enriching Dr. Raber cannot again be recovered under a theory of unjust enrichment.

B. **Consequential Damages**

Arkansas law follows the minority rule regarding proof necessary to succeed on a claim for consequential damages. *Fed. Deposit Ins. Corp. as Receiver for First S. Bank v. BKD, LLP*, No. 4:13cv720JM, 2014 WL 12769667, at * 3 (E.D. Ark. 2014). To recover consequential damages on a contract, the plaintiff must prove the defendant knew at the time he entered the contract that his breach would cause the plaintiff to suffer special damages, and also that the defendant "tacitly agreed" to assume responsibility for those damages. *Reynolds Health Care Svcs., Inc. v. HMNH, Inc.*, 217 S.W.3d 797, 803-04 (Ark. 2005). "To make [the defendant] liable for the special damages in such a case, there must not only be knowledge of the special circumstances, but such knowledge must be brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached." *Bank of America, N.A. v. C.D. Smith Motor Co.*, 106 S.W.3d 425, 431 (Ark. 2003). In the absence of an express contract to pay special damages, "the facts and circumstances in proof must be such as to make it reasonable for the judge or the jury trying the case to believe that the party at the time of the contract tacitly consented to be bound to more than ordinary damages in case of default on his part." *Id.* Whether notice of any such special circumstances was given to the breaching party is a question of fact. *Reynolds Health Care Svcs., Inc.,* 106 S.W.3d at 805. In determining the reasonable contemplation of the parties, it is proper to consider the nature and purpose of the contract and the attending circumstances known to the parties at the time the contract was executed. *Id.*

Here, WRMC identifies a material dispute of fact regarding whether Dr. Raber had

6

sufficient knowledge that WRMC would incur special damages by having to recruit and hire another neurosurgeon to fulfill his emergency and non-emergency duties as prescribed by his contract. WRMC notes that before Dr. Raber signed the employment agreement, J. Larry Shackleford communicated to Dr. Raber that WRMC needed to have neurosurgeons available to cover the Emergency Department 24-hours-a-day, 365 days-a-year so it could meet the Trauma II facility requirements. (Doc. 27, ¶¶ 2; Doc. 25-1, ¶¶ 3–7). Furthermore, WRMC's cited evidence reveals that Dr. Raber knew that WRMC was a Trauma II facility and that he would be required to be on call as a result. These facts would allow a reasonable jury to determine that Dr. Raber was fully aware of WRMC's need for his emergency services to retain its designation as a Trauma II facility and that his failure to report to WRMC as prescribed in the contract would require WRMC to hire another full-time surgeon, or pay for *locum tenens* coverage until another neurosurgeon was hired.

WRMC also cites enough evidence to create a genuine dispute of material fact over whether Dr. Raber tacitly consented to compensating WRMC for recruiting expenses and *locum tenens* coverage if he did not report to work as obligated in the agreement. WRMC states that Dr. Raber's knowledge of his emergency call obligations in the contract in conjunction with his knowledge of WRMC's Trauma II designation arguably shows that Dr. Raber tacitly agreed to be liable for special damages if he did not report to work. As Dr. Raber correctly points out in his brief in support (Doc. 23, p. 10), WRMC's factual allegation does not reach the level of facts proffered in *Bank of America, N.A. v. C.D. Smith Motor Co., Inc.*, 106 S.W.3d at 433 (finding notice and tacit agreement where, "at the time of the signing of the parties' agreement, the Bank's vice president of commercial lending, Mr. Johnson, accepted the agreement . . . knowing full well that Smith had expressly stated that he intended to hold the Bank liable if the Bank did not honor the . . . agreement

7

. . . [and] Smith may have told Johnson at the time of the signing of the agreement, that Smith would look to the Bank for compensation if his business were destroyed."). However, on summary judgment, when viewing the facts and circumstances of what Dr. Raber knew in the light most favorable to WRMC, WRMC has alleged enough evidence that would allow a reasonable jury to find that Dr. Raber tacitly agreed to be responsible for the *locum tenens* coverage resulting from his failure to meet his emergency call obligations. As a result, summary judgment on WRMC's consequential damages claim is inappropriate.

**V.      Conclusion**

IT IS THEREFORE ORDERED that Defendant's motion for partial summary judgment (Doc. 22) is GRANTED in part and DENIED in part, and Plaintiff's claim for unjust enrichment is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 24th day of September 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE